1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  EDWARD R. HAYNES, | )   Case No.: 1:12-cv-00459 - AWI - JLT |
| 12              Plaintiff, | )   ORDER DISMISSING COMPLAINT WITH |
| 13          v. | )   LEAVE TO AMEND |
| 14  JODY SCHWENKEL, et al., | )   (Doc. 1) |
| 15              Defendants. | ) |
| 16 | ) |

17          Edward Haynes is proceeding *pro se* with an action for a violation of civil rights and

18  conspiracy against defendants Jody Schwenkel, Jose Ortiz, Soledad Giron, Marisol O'Neil, Annette

19  Dodson, James Ledford, Kathy Ware, Patty Dudley, Russ Miller, and Diane Hernandez (collectively

20  "Defendants"), who are employees of J.P. Morgan Chase and Company Bank.  For the following

21  reasons, Plaintiff's complaint is **DISMISSED WITH LEAVE TO AMEND**.

22  **I.     PLEADING STANDARDS**

23          General rules for pleading complaints are governed by the Federal Rules of Civil Procedure.  A

24  pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short

25  and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the

26  relief sought, which may include relief in the alternative or different types of relief."  Fed. R. Civ. P.

27  8(a).  The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less

28  stringent standards" than pleadings by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner.  *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  The purpose of the complaint is to give the defendant fair notice of the claims against him, and the grounds upon which the complaint stands.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).  Conclusory and vague allegations do not support a cause of action.  *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted).  When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; conclusions in the pleading are not entitled to the same assumption of truth.  *Id.*

The Court has a duty to dismiss a case at any time it determines an action fails to state a claim, "notwithstanding any filing fee that may have been paid."  28 U.S.C. § 1915e(2).  Accordingly, a court "may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim."  *See Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357 at 593 (1963).  However, the Court may grant leave to amend a complaint to the extent deficiencies of the complaint can be cured by an amendment.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

*///*

2

II.	**PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges he is an African-American senior citizen, and is disabled within the meaning of the Americans with Disabilities Act.  (Doc. 1 at 15-16).   He opened an account with J.P. Morgan Chase and Company Bank ("Chase Bank") on or about October 20, 2009.  *Id.* at 6.  According to Plaintiff, he was "asked . . . if he had any income payments he wished to have as a direct deposit, to which Plaintiff replied in the negative."  *Id.*  Plaintiff asserts he noted a discrepancy with his credit card in May 2010, at which time Plaintiff spoke with Marisol O'Neil and informed him that Plaintiff "had a specific arrangement with Bank of America wherein funds were moved from his savings account monthly to his checking account . . . and that Plaintiff did not wish to alter this arrangement."  *Id.* at 6-7.

On July 13, 2010, Plaintiff discovered that his direct-deposit funds from the Veteran's Administration ("VA") "had been diverted from his Bank of America savings account to his Chase Bank checking account."  (Doc. 1 at 7).  Plaintiff contends he went to Chase Bank and met with Marisol O'Neil, inquiring "what document or computer data [the Bank] had utilized which would have permitted them to divert Plaintiff's direct-deposit from Bank of America to Chase Bank."  *Id.*  He alleges Marisol O'Neil reported "she found nothing in Chase Bank's computer records which could answer his question . . . and she did not know of any other actions which might have been taken by Chase Bank that might have caused the diversion of his direct-deposit funds."  *Id.*

After Ms. O'Neil was unable to tell Plaintiff how the direct-deposit change occurred, Plaintiff spoke with Ms. Lines, a Bank of America representative, on July 16, 2010.  (Doc. 1 at 8).  He contends Ms. Lines informed Plaintiff "she did not know how the transfer could have been made without Plaintiff's specific approval."  *Id.*  She assisted Plaintiff in completing an application "to change the direct-deposit back to Bank of America," which he submitted to the VA.  *Id.*  However, "the office was unable to locate Plaintiff's records . . . [and] the application was returned to Plaintiff."  *Id.*  He asserts he traveled to the VA to have the direct-deposit funds redirected to Bank of America on August 5, 2010.  *Id.*  There, Plaintiff confirmed his July and August 2010 payments had been deposited into his checking account with Chase Bank, and he completed an application to restore the deposit of funds to Bank of America.  *Id.*

According to Plaintiff, he went to Chase Bank with David Cochran, a retired civil attorney, to speak with the branch manager on August 16, 2010.  (Doc. 1 at 8).  Plaintiff contends Annette Dodson, Assistant Manager of Sales and Bank Tellers, informed him that the manager was unavailable, and Ms. Dodson said she would attempt to resolve the matter.  *Id.* at 9. Plaintiff asserts Ms. Dodson "appeared intent upon classifying the situation as some form of a simple 'misunderstanding' between Plaintiff and [Chase Bank] employees who interviewed Plaintiff," and "placing the blame for this puzzling situation directly on Defendant O'Neil."  *Id.*  Plaintiff alleges Ms. Dodson knew the deposit came from VA, but he never told the Chase Bank employees the source of his direct deposit, and "this information could ONLY have been the product of some unethical, if not illegal, search and/or manipulation of Plaintiff's personal records."  *Id.* at 10.

On August 17, 2010, "Plaintiff awoke and discovered that he had fallen to the floor in his home," which caused an injury to his face.  (Doc. 1 at 11).  He went to the Fresno Veteran's Administration Medical Center for treatment, but the "staff was unable to determine what caused the fall and subsequent unconsciousness."  *Id.*  Plaintiff asserts this was "directly attributable to the stress he was suffering from . . . being unable to resolve the Chase Base situation."  *Id.*

Plaintiff alleges Mr. Cochran attempted to contact Kathy Ware, the supervisor of all Bakersfield Chase Bank branches, on his behalf on August 20, 2010.  (Doc. 1 at 11).  Patty Dudley informed Mr. Cochran that Ms. Ware was unavailable, but she "verified that the direct-deposit funds had indeed been diverted."  *Id.* at 11-12.  In addition, Ms. Dudley said she would leave a message with Ms. Ware regarding Plaintiff's complaint.  *Id.* at 12.  A couple days later, Ms. Dudley requested Mr. Cochran bring a copy of the history of the information regarding Plaintiff's complaint to Chase Bank, which he delivered on August 25, 2010.  *Id.*

Mr. Cochran continued to attempt to resolve the matter and corresponded on Plaintiff's behalf with Chase Bank representatives, including Ms. Dudley, James Ledford, Annette Dodson, and Russ Miller.  (Doc. 1 at 12-13).  According to Plaintiff, Mr. Cochran spoke with Mr. Miller on August 31, 2010, and informed Mr. Miller: "If no response is heard from the Executive Office by the close of business on 9 September, Plaintiff would be securing legal counsel, with a view toward pursuing a Class Action civil complaint."  *Id.* at 14.  Plaintiff asserts he was contacted by Diane Hernandez from

1   Chase Bank's Executive Office on September 14, 2010, but the representative said "Chase Bank

2   would only give Plaintiff an 'apology.'"  *Id.*

3   **III.    DISCUSSION AND ANALYSIS**

4          Based upon the foregoing facts, Plaintiff contends "Defendants, acting individually or in

5   unlawful concert with one another, violated Plaintiff's well-settled and clearly established civil rights

6   . . . in violation of the tenets held by the Fourteenth Amendment."  (Doc. 1 at 19).  In addition,

7   Plaintiff asserts Defendants violated protections provided by the Civil Rights Act "delineated at Title

8   42, United States Code, Section 1981."  *Id.* at 3.

9          **A.      Section 1983 Claims**[1]

10         Plaintiff contends Defendants violated the Due Process Clause and the Equal Protection Clause

11  of the Fourteenth Amendment, and seeks to state a claim pursuant to 42 U.S.C. § 1983 ("Section

12  1983").  In relevant part, Section 1983 provides:

13         Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
           any State or Territory or the District of Columbia, subjects, or causes to be subjected, any
14         citizen of the United States or other person within the jurisdiction thereof to the
           deprivation of any rights, privileges, or immunities secured by the Constitution and laws,
15         shall be liable to the party injured in an action at law, suit in equity, or other proper
           proceeding for redress.
16

17  42 U.S.C. § 1983.  A plaintiff must allege facts from which it may be inferred (1) he was deprived of a

18  federal right, and (2) a person or entity who committed the alleged violation acted under color of state

19  law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

20              1.      Defendants were not state actors.

21         Here, Plaintiff identifies several individuals who worked for Chase Bank as defendants in the

22  action, and asserts they are "state actors."  Significantly, however, "private parties are not generally

23  acting under color of state law."  *Price v. Hawaii*, 939 F.2d 702, 707-09 (9th Cir. 1991); *see also*

24  *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private

25

26  [1] Though Plaintiff alleges that Defendants were "state actors" he alleges also that they were federal officers.  (Doc. 1 at 16)
    The mechanism to obtain a remedy for violations of civil rights committed by federal actors, is an action brought pursuant
27  to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  However, the same
    analysis applies to an action brought under § 1983 or *Bivens*. *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir.1991)
28  ("Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a
    federal actor under *Bivens*.")

party be viewed as a 'state actor' for section 1983 purposes.").  Consequently, the Ninth Circuit explained that "[w]hen addressing whether a private party acted under color of law, we . . . start with the presumption that private conduct does not constitute governmental action."  *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir. 1999).

 "Section 1983 liability attaches only to individuals who carry a badge of authority of a State and represent it in some capacity," and, as a result, the Court must examine whether Plaintiff has sufficiently plead facts to support the allegation that Defendants were state actors.  *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (citations omitted).  The Supreme Court has identified four tests to determine whether a private individual's actions implicate state action: (1) the public function test, (2) the joint action test, (3) the state compulsion test, and (4) the governmental nexus test.  *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997).

### a.    The public function test

The public function test inquires whether the private actor performs a public function that is "traditionally the exclusive prerogative of the state."  *Parks School of Bus., Inc. v Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995).  Because banking is not traditionally a function performed by the state, this test is inapplicable.

### b.    The joint action test

The Supreme Court explained, "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute.  To act 'under color' of law does not require that the accused be an officer of the State.  It is enough that he is a willful participant in joint activity with the State or its agents."  *Lugar v. Edmonson Oil Co.*, 456 U.S. 922, 941 (1982) (citation omitted).  The test examines whether a state has "'so far insinuated itself into a position of interdependence with the private actor that it must be recognized as a joint participant in the challenged activity."  *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 607 (9th Cir. 1989) (citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961)).  Here, Plaintiff has not alleged facts demonstrating the individual defendants acted jointly with a state, to deprive Plaintiff of constitutional rights.  Consequently, the joint action test is not satisfied.

///

### c.      The state compulsion test

State action may be demonstrated where a state "exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State." *Johnson*, 113 F.3d at 1119 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Plaintiff has not alleged any states' laws compelled or encouraged Defendants to take the actions Plaintiff alleges. Accordingly, Plaintiff's allegations are insufficient to satisfy this test.

### d.      The nexus test

The governmental nexus test inquires whether there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State of itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). Generally, the test requires evidence that the private actor is "entwined with governmental policies, or . . . [the] government is entwined in [the private actor's] management or control." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 296 (2001). The Ninth Circuit has identified factors for the Court's consideration to determine whether there is a sufficiently close nexus including: "(1) the organization is mostly state institutions; (2) state officials dominate decision making of the organization; (3) the organization's funds are largely generated by the state institutions; and (4) the organization is acting in lieu of a traditional state actor." *Villegas v. Gilroy Garlic Festival Assoc.*, 541 F.3d 950, 955 (9th Cir. 2008).

Plaintiff does not include any factual allegations in his complaint satisfying one of the factors identified by the Ninth Circuit. Rather, Plaintiff alleges Chase Bank "is a regulated entity, operates public banking facilities across this Nation, [and] their corporate employees must also be considered state actors." (Doc. 1 at 25). Thus, Plaintiff contends there is a sufficiently close nexus between Defendants and the government for the following reasons:

> (1) the corporate banks receive Federal funding; (2) their buildings must be considered "public" in nature; (3) the individual bank buildings are located on various State properties; (4) the corporate banks are regulated both by the individual States where they are located, as well as the Federal Government; and (5) the individual banks are insured by the Federal Deposit Insurance Corporation.

1   *Id*.  However, these allegations do not support a finding that *Defendants* are state actors.  The Supreme

2   Court has explained "[t]he mere fact that a business is subject to state regulation does not by itself

3   convert its action into that of the State." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350

4   (1974).  Therefore, it follows that the employees of a business are not state actors simply by virtue of

5   their employer being subject to state regulation.   Moreover, Plaintiff does not allege the individual

6   Defendants are entwined with state polices in some manner.  Consequently, Plaintiff fails to allege

7   facts demonstrating there is a significantly close nexus between Defendants and a state government to

8   satisfy this test.

9              2.       Plaintiff has not demonstrated a deprivation of a constitutional right.

10         According to Plaintiff, Defendants violated his rights to due process and equal protection under

11   the Fourteenth Amendment.  Significantly, even if Plaintiff demonstrated Defendants were state

12   actors, he has failed to allege facts to state cognizable claims for these violations.

13                                    *a.       Due Process*

14         The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive

15   any person of life, liberty, or property, without due process of law."  *U.S. Constitution, amend. XIV §1*.

16   This clause guarantees both procedural and substantive due process, protecting individuals against the

17   deprivation of liberty or property interest by the government.  "A substantive due process inquiry

18   focuses on 'what' the government has done," while a procedural due process analysis focuses upon

19   "'how and when' the government did it." *Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir. 1990).  "A §

20   1983 claim based upon procedural due process has three elements: (1) a liberty or property interest

21   protected by the Constitution; (2) a deprivation of the interest by the government, and (3) lack of

22   process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  On the other hand,

23   "[i]n order to establish a constitutional violation based on substantive due process, a plaintiff must

24   show both a deprivation of liberty and conscience-shocking behavior by the government." *Brittain v.*

25   *Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).

26         To the extent that Plaintiff alleges a violation of procedural due process, he has not identified a

27   protected property or liberty interest.  In addition, as discussed above, Plaintiff has not shown actions

28   by the state or state actors, and his claim for a violation of procedural due process fails.  Likewise,

1   Plaintiff has not demonstrated a deprivation of liberty or conscious-shocking behavior that may be

2   attributed to the state.  Therefore, Plaintiff fails to state a cognizable claim for due process violation.

3                                          b.        *Equal Protection*

4           The Equal Protection Clause states that "no state shall… deny to any person within its

5   jurisdiction the equal protection of the laws."  *U.S. Constitution, amend. XIV §1*.  In essence, this

6   commands that all persons who are similarly situated be treated alike.  *City of Cleburne v. Cleburne*

7   *Living Center, Inc.*, 473 U.S. 432, 439 (1985).  A plaintiff can establish an equal protection claim in

8   two ways.  First, a plaintiff may allege "the defendants acted with an intent or purpose to discriminate

9   against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d

10  1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999).  Second, where the acts in question do

11  not involve a protected class, a plaintiff can establish a "class of one" claim by alleging that he "has

12  been intentionally treated differently from others similarly situated and that there is no rational basis

13  for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

14          Even when viewed liberally, Plaintiff's Complaint fails to state an equal protection violation.

15  Plaintiff alleges he is a member of protected classes because he is an African-American senior citizen.

16  (Doc. 1 at 15).  Plaintiff summarily contends Defendants discriminated against him.  *Id.* However, this

17  conclusion is not sufficient to state a claim, because there are no facts alleged that support this

18  assertion.  *See Iqbal*, 129 S. Ct. at 1949; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (the

19  court is "not bound to accept as true a legal conclusion couched as a factual allegation").  Plaintiff

20  does not contend that Defendants discriminated against him in violation of equal protection rights or

21  that he was treated differently from other similarly situated individuals.  Therefore, Plaintiff failed to

22  state cognizable claim for an equal protection violation.

23      **B.      Conspiracy under 42 U.S.C. 1985**

24          A claim of conspiracy requires a plaintiff to "demonstrate the existence of an agreement or

25  'meeting of the minds' to violate constitutional rights."  *Mendocino Envtl. Ctr. v. Mendocino County*,

26  192 F.3d 1283, 1301 (9th Cir. 1999) (citations omitted).  In addition, a plaintiff must show an "actual

27  deprivation of constitutional rights."  *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting

28  *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "To be liable, each participant

9

in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.3d 1539, 1540-42 (9th Cir. 1989).  A conspiracy may be properly alleged when a plaintiff states "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights." *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997).

Notably, Plaintiff did not make any factual allegations regarding a conspiracy.  The Court will not speculate as to which defendants Plaintiff believes conspired to violate his rights or the manner in which they did so.  *See Bell Atlantic Corporation. v. Twombly*, 127 S. Ct. 1955, 1965 (a plaintiff must set forth more than labels and conclusions, and include the "grounds of his entitlement to relief") (citation omitted).  Therefore, Plaintiff has not stated a cognizable claim for a conspiracy.

### C.     Discrimination in violation of 42 U.S.C. § 1981

According to Plaintiff, "Defendants, either individually or in unlawful concert with one another," violated the protections against racial discrimination set forth in 42 U.S.C. § 1981 ("Section 1981") (Doc. 1 at 3).  Under Section 1981, all persons "shall have the same right . . . to make and enforce contracts."  Therefore, to prevail on a Section 1981 claim, a plaintiff must show (1) intent to discriminate based on race and (2) this discrimination interfered with the making and enforcing of contracts.  *See Imagineering, Inc v. Kiewit Pacific Co.*, 976 F.2d 1301, 1313 (9th Cir. 1992) ("Proof of intent to discriminate is necessary to establish a violation of section 1981.").  Here, Plaintiff has not met his burden to "at least allege facts that would support an inference that defendants intentionally and purposefully discriminated against [him]." *See id.*  Likewise, Plaintiff has not alleged facts that would support that an act of discrimination interfered with the making or enforcement of a contract. At most, Plaintiff claims that some nefarious act by one or more of the Defendants caused his direct deposit to be diverted to Chase Bank.  Nothing about this assertion gives rise to an inference that these acts were completed because of his race.  Consequently, Plaintiff fails to state a cognizable claim for discrimination under Section 1981.

### IV.     CONCLUSION AND ORDER

Plaintiff has not alleged facts that demonstrate Defendants are state actors or committed violations of his constitutional rights.  Accordingly, Plaintiff complaint fails to state a cognizable

claim and it does not appear the Court has subject matter jurisdiction over this action.  However, the Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order.  *See Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). The amended complaint must reference the docket number of assigned to this case and must be labeled "First Amended Complaint."

Plaintiff is advised that an amended complaint supersedes the original complaint.  *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.  Thus, once Plaintiff files an amended complaint, Plaintiff's original complaint will not serve any function in the case.  Finally, Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King*, 814 F.2d at 567 (citing *London v. Coopers & Lybrand*, 644 F2d 811, 814 (9th Cir. 1981)); *accord*. *Forsyth*, 114 F.3d at 1474.

**Plaintiff is firmly cautioned** that according to Fed. R. Civ. P. Rule 8, any amended complaint must be a concise, "short and plain statement of the facts."  On its face, Plaintiff's complaint which is 42 pages,including exhibits, is neither short nor plain and, therefore, does not comply with Rule 8. Hollis v. York, 2011 U.S. Dist. LEXIS 94585 at 3 (E.D. Cal. Aug. 24,2011) (A 34-page complaint with 34 pages of exhibits "that lists multiple unrelated incidents and contains legal argument" violates Rule 8); Palmer v. Woodford, 2011 U.S. Dist. LEXIS 93339 at *33 (E.D. Cal. Aug. 19, 2011) (a long complaint that contains unrelated claims violates Rule 8); Coleman v. Dir. of Corr. & Rehab., 2010 U.S. Dist. LEXIS 133761 at *6 (E.D. Cal. Nov. 30, 2010)(same; Simmons v. Akanno, 2010 U.S. Dist. LEXIS 138548 at *8 (E.D. Cal. Dec. 7, 2010) (A 33-page complaint with 53 pages of exhibits violates Rule 8); Knapp v. Cate, 2010 U.S. Dist. LEXIS 98997 at *5-6 (E.D. Cal. Sept. 7, 2010) (A 26-page complaint with 60 pages of exhibits violates Rule 8).  Plaintiff is advised that his First Amended Complaint, generally, should not contain legal authority or argument and need not have supporting evidence attached.  Moreover, a memorandum or points and authorities should not be filed with the complaint.

1        Moreover, Plaintiff is advised that his amended complaint, if he chooses to file one SHALL

2   comply with Fed. R. Civ. P. 8.

3        Based upon the foregoing, **IT IS HEREBY ORDERED**:

4        1.       Plaintiff's complaint is **DISMISSED WITH LEAVE TO AMEND**;

5        2.       Within twenty-one days from the date of service of this order, Plaintiff SHALL file an

6                 amended complaint curing the deficiencies identified by the Court in this order; and

7        3.       If Plaintiff fails to comply with this order, the action will be dismissed for failure to

8                 obey a court order.

9

10

11  IT IS SO ORDERED.

12      Dated:   **April 18, 2012**                        **/s/ Jennifer L. Thurston**

13                                                   UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12