1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

11  EDWARD R. HAYNES,                            )   Case No.: 1:12-cv-00459 - AWI - JLT
                                                )
12          Plaintiff,                          )   FINDINGS AND RECOMMENDATION
                                                )   DISMISSING PLAINTIFF'S FIRST AMENDED
13      v.                                      )   COMPLAINT WITHOUT LEAVE TO AMEND
                                                )
14  JODY SCHWENKEL, et al.,                     )
                                                )
15          Defendants.                         )
                                                )
16  _____    )

17          Edward Haynes ("Plaintiff") seeks to proceed *pro se* with an action for a violation of civil

18  rights and conspiracy against defendants Jody Schwenkel, Jose Ortiz, Soledad Giron, Marisol O'Neil,

19  Annette Dodson, James Ledford, Kathy Ware, Patty Dudley, Russ Miller, and Diane Hernandez, who

20  are employees of J.P. Morgan Chase and Company Bank (collectively "Defendants").  Pursuant to the

21  Court's order, Plaintiff filed a First Amended Complaint on May 10, 2012.  (Doc. 3).  For the

22  following reasons, the Court recommends Plaintiff's First Amended Complaint be **DISMISSED**

23  **WITHOUT LEAVE TO AMEND**.

24  **I.      Pleading Standards**

25          General rules for pleading complaints are governed by the Federal Rules of Civil Procedure.  A

26  pleading stating a claim for relief must include a statement affirming the court's jurisdiction, "a short

27  and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the

28  relief sought, which may include relief in the alternative or different types of relief."  Fed. R. Civ. P.

8(a).  The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than pleadings by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner.  *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to give the defendant fair notice of the claims against him, and the grounds upon which the complaint stands.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted). Conclusory and vague allegations do not support a cause of action.  *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 129 S. Ct. at 1949 (citations omitted).  When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; conclusions in the pleading are not entitled to the same assumption of truth.  *Id.*

The Court has a duty to dismiss a case at any time it determines an action fails to state a claim, "notwithstanding any filing fee that may have been paid."  28 U.S.C. § 1915e(2).  Accordingly, a court "may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim."  *See Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357 at 593 (1963).  However, leave to amend a complaint may be granted

1    to the extent deficiencies of the complaint can be cured by an amendment.  *Lopez v. Smith*, 203 F.3d

2    1122, 1127-28 (9th Cir. 2000) (en banc).

3    **II.      Plaintiff's Allegations**

4             Plaintiff alleges he is an African-American senior citizen.  (Doc. 3 at 10).  He opened an

5    account with J.P. Morgan Chase and Company Bank ("Chase") on or about October 20, 2009.  *Id.* at 6.

6    According to Plaintiff, a Chase representative "asked Plaintiff if he had any income payments he

7    wished to have as a direct deposit, to which Plaintiff replied in the negative."  *Id.*  Plaintiff asserts he

8    noted a discrepancy with his credit card in May 2010, at which time Plaintiff spoke with Marisol

9    O'Neil and informed her that Plaintiff "had a specific arrangement with Bank of America wherein

10   funds were moved from his savings account monthly to his checking account . . . and that Plaintiff did

11   not wish to alter this arrangement."  *Id.* at 6-7.

12            On July 13, 2010, Plaintiff discovered that his direct-deposit funds from the Veteran's

13   Administration ("VA") "had been diverted from his Bank of America savings account to his Chase

14   account."  (Doc. 3 at 7).  Plaintiff contends he went to Chase and met with Ms. O'Neil, inquiring

15   "what document, methodology, or computer data had been utilized by Chase which would have

16   permitted Chase to divert Plaintiff's direct-deposit funds."  *Id.*  He alleges Ms. O'Neil reported "she

17   found nothing in Chase's computer records which could answer his question."  *Id.*

18            Plaintiff met with Ms. Lines, a Bank of America representative, on July 16, 2010, "to see if she

19   could determine how his funds had been diverted from Bank of America to Chase."  (Doc. 3 at 7).  He

20   contends Ms. Lines informed Plaintiff "she did not know how the transfer could have been made

21   without Plaintiff's specific approval."  *Id.*  With Ms. Lines assistance, Plaintiff completed "an

22   application to re-divert the VA funds to Bank of America."  *Id.*

23            Plaintiff asserts he traveled to the VA Office on August 5, 2010 "after he discovered the Chase

24   diversion was still not corrected."  (Doc. 3 at 7).  There, Plaintiff confirmed his July and August 2010

25   payments had been deposited into his new Chase account, and the VA "assisted Plaintiff in re-

26   diverting the funds from Chase back to Bank of America."  *Id.*

27            According to Plaintiff, he attempted to meet with defendant Ledford, the branch manager at the

28   Ming Avenue Chase Bank, on August 16, 2010 "to determine how the funds had been diverted

3

1   without Plaintiff's authorization." (Doc. 3 at 7-8). However, Plaintiff met with Ms. Dodson, who

2   Plaintiff said "seemed intent on placing blame for the funds diversion upon Defendant O'Neil." *Id.* at

3   8. Plaintiff questioned "how any Chase employee discovered the fact of Plaintiff's VA direct-deposit

4   funds, inasmuch as Plaintiff had not divulged this information." *Id.*

5        On August 17, 2010, Plaintiff alleges he "sustained a facial and head injury as the result of a

6   fall." (Doc. 3 at 8). Plaintiff asserts, travelled to the VA in Fresno for medical treatment, and

7   "[d]uring the medical interview, it was determined that Plaintiff may well have fallen and injured

8   himself as a direct result of the emotional stress Plaintiff was undergoing while trying to straighten out

9   the Chase diversion of his direct-deposit funds."[1] *Id.*

10       Plaintiff alleges Mr. Cochran[2] attempted to contact Kathy Ware, the supervisor of all

11  Bakersfield Chase Bank branches, on his behalf on August 20, 2010. (Doc. 3 at 8). Patty Dudley, Ms.

12  Ware's administrative assistant, informed him that Ms. Ware was unavailable. *Id.* According to

13  Plaintiff, James Ledford sent documents regarding Plaintiffs' complaint to the Chase Executive Office

14  for review by the legal department. *Id.* Plaintiff attempted to contact Ms. Ware and Mr. Ledford on

15  August 31, 2010, but both were unavailable. *Id.* at 9. Plaintiff asserts he complained "about the lack

16  of availability of any Chase . . . supervisors," and was informed that Mr. Miller "would 'immediately

17  follow up' on the forwarding of the [his] documents to the Executive Office." *Id.*

18       Plaintiff asserts he was contacted by Diane Hernandez from Chase Bank's Executive Office on

19  September 14, 2010, but "Chase would only give Plaintiff an 'apology.'" (Doc. 3 at 9).

20  **III.    Discussion and Analysis**

21       Based upon the foregoing facts, Plaintiff contends Defendants committed the crime of

22  embezzlement. (Doc. 3 at 3). In addition, Plaintiff asserts "Defendants participated in an unlawful

23  and unethical scheme to commit criminal fraud. . ." and "in violation of the Due Process Clause of the

24  Fourteenth Amendment, Chase employees unlawfully and unethically deprived Plaintiff of the use of

---

25

26  [1] Notably, in Plaintiff's original complaint filed on March 27, 2012, he alleged "[t]he medical staff was unable to determine what caused the fall and subsequent unconsciousness." (Doc. 1 at 11). In addition, Plaintiff reported: "It should be noted that Plaintiff is of the belief that this episode is directly attributable to the stress he was suffering from . . . being unable to resolve the Chase Base situation." *Id.*

27

28       [2] Previously, Plaintiff explained David Cochran is a retired civil attorney. (Doc. 1 at 8).

4

1   his personal property, thereby causing Plaintiff emotional stress and possible physical injury, thereby

2   entitling Plaintiff to redress in this action at law." *Id.* at 9-10. Finally, Plaintiff contends the actions

3   taken by Defendants "occurred because Plaintiff is either a senior citizen, or an African-American,

4   each and/or of which is a violation of the Equal Protection Clause." *Id.*

5       **A.    Extortion**

6       Plaintiff contends Defendants committed the crime of embezzlement. (Doc. 3 at 3). Notably,

7   however, the federal criminal statutes relating to embezzlement do not give rise to a private right of

8   action. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (affirming dismissal of claims brought

9   under criminal provisions that "provide[d] no basis for civil remedy"); *see also Williams v. Technique*

10  *Towing/Advanced Automotive/GB7*, 2011 U.S. Dist. LEXIS 77089, at *6 (E.D. Cal. July 12, 2012)

11  (explaining "claims under Title 18 U.S.C. must fail because these criminal statutes do not provide a

12  private right of action").

13      **B.    Fraud**

14      To state a cognizable claim for fraud, Plaintiff must allege: "a false representation, knowledge

15  of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v. Brewster*, 96 F.3d 1240,

16  1245 (9th Cir. 1996). Under Rule 9(b) of the Federal Rules of Civil Procedure, "a party must state

17  with particularity the circumstances constituting fraud." *Id.* Thus, the Ninth Circuit explained the

18  burden to establish fraud is "heavy," *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990).

19  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the

20  misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v.*

21  *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1120 (9th Cir. 2003)); *see also Swartz v. KPMG LLP*, 476

22  F.3d 756, 764 (9th Cir. 2004) (allegations of fraud must include "an account of the time, place, and

23  specific content of the false representations as well as the identities of the parties to the

24  misrepresentations") (internal quotation marks and citation omitted).

25      Here, Plaintiff fails to allege facts demonstrating any defendant made a false representation to

26  Plaintiff, or had knowledge of a false representation. Likewise, Plaintiff fails to allege facts

27  supporting a finding that Defendants acted with intent to defraud, or that he suffered any damages

28  considering the money was in an account available for his use. Because Plaintiff fails to allege facts

demonstrating the elements of fraud are satisfied, he fails to state a cognizably claim for fraud against any defendant.

**C.    Section 1983 Claims**[3]

Although Plaintiff alleges Defendants violated the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment, the amendments to the Constitution do not create direct causes of action.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 929 (9th Cir. 2001) ("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution."  However, 42 U.S.C. § 1983 ("Section 1983") "is a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Thus, an individual may bring an action for the deprivation of civil rights pursuant to Section 1983, which states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  A plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

**1.    Defendants were not state actors.**

Here, Plaintiff identifies several individuals who worked for Chase Bank as defendants in the action, and asserts they are "state actors."  Significantly, however, "private parties are not generally acting under color of state law."  *Price v. Hawaii*, 939 F.2d 702, 707-09 (9th Cir. 1991); *see also Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private

---

[3] Though Plaintiff alleges that Defendants were "state actors" he alleges also that they were federal officers. (Doc. 3 at 2-3). The mechanism to obtain a remedy for violations of civil rights committed by federal actors, is an action brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  The same analysis applies to an action brought under Section 1983 or *Bivens. Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) ("Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens.*").  Nevertheless, Plaintiff alleges violations of only the Fourteenth Amendment, which is applicable to the state, rather than the federal government.

1   party be viewed as a 'state actor' for section 1983 purposes.").  Consequently, the Ninth Circuit

2   explained that "[w]hen addressing whether a private party acted under color of law, we . . . start with

3   the presumption that private conduct does not constitute governmental action."  *Sutton v. Providence*

4   *St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir. 1999).

5       "Section 1983 liability attaches only to individuals who carry a badge of authority of a State

6   and represent it in some capacity," and, as a result, the Court must examine whether Plaintiff has

7   sufficiently plead facts to support the allegation that Defendants were state actors.  *Franklin v. Fox*,

8   312 F.3d 423, 444 (9th Cir. 2002) (citations omitted).  The Supreme Court has identified four tests to

9   determine whether a private individual's actions implicate state action: (1) the public function test, (2)

10   the joint action test, (3) the state compulsion test, and (4) the governmental nexus test.  *Johnson v.*

11   *Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997).

12                     a.       *The public function test*

13       The public function test inquires whether the private actor performs a public function that is

14   "traditionally the exclusive prerogative of the state."  *Parks School of Bus., Inc. v Symington*, 51 F.3d

15   1480, 1486 (9th Cir. 1995).  Because banking is not traditionally a function performed by the state,

16   this test is inapplicable.

17                     b.       *The joint action test*

18       The Supreme Court explained, "Private persons, jointly engaged with state officials in the

19   prohibited action, are acting 'under color' of law for purposes of the statute.  To act 'under color' of

20   law does not require that the accused be an officer of the State.  It is enough that he is a willful

21   participant in joint activity with the State or its agents."  *Lugar v. Edmonson Oil Co.*, 456 U.S. 922,

22   941 (1982) (citation omitted).  The test examines whether a state has "'so far insinuated itself into a

23   position of interdependence with the private actor that it must be recognized as a joint participant in

24   the challenged activity." *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d

25   503, 607 (9th Cir. 1989) (citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961)).

26   Here, Plaintiff has not alleged facts demonstrating Defendants acted jointly with a state, to deprive

27   Plaintiff of constitutional rights.  Consequently, the joint action test is not satisfied.

28   *///*

1                              *c.*        *The state compulsion test*

2        State action may be demonstrated where a state "exercised coercive power or has provided

3 such significant encouragement, either overt or covert, that the [private actor's] choice must in law be

4 deemed to be that of the State." *Johnson*, 113 F.3d at 1119 (quoting *Blum v. Yaretsky*, 457 U.S. 991,

5 1004 (1982).  Plaintiff has not alleged any states' laws compelled or encouraged Defendants to take

6 the actions Plaintiff alleges.  Accordingly, Plaintiff's allegations are insufficient to satisfy this test.

7                              *d.*        *The nexus test*

8        The governmental nexus test inquires whether there is a "sufficiently close nexus between the

9 State and the challenged action of the regulated entity so that the action of the latter may be fairly

10 treated as that of the State of itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974).

11 Generally, the test requires evidence that the private actor is "entwined with governmental policies, or

12 . . . [the] government is entwined in [the private actor's] management or control." *Brentwood Acad. v.*

13 *Tennessee Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 296 (2001).  The Ninth Circuit has identified

14 factors for the Court's consideration to determine whether there is a sufficiently close nexus including:

15 "(1) the organization is mostly state institutions; (2) state officials dominate decision making of the

16 organization; (3) the organization's funds are largely generated by the state institutions; and (4) the

17 organization is acting in lieu of a traditional state actor." *Villegas v. Gilroy Garlic Festival Assoc.*,

18 541 F.3d 950, 955 (9th Cir. 2008).

19        Plaintiff does not include any factual allegations in his amended complaint satisfying one of

20 the factors identified by the Ninth Circuit.  Rather, Plaintiff alleges Chase "is an international banking

21 corporation with close ties to the United States Government, which governs Chase's policies and

22 procedures under the rules of the Securities and Exchange Commission, which closely monitors all

23 Federally-insured banks for violations of fraud under Common Law, or breaches of fiduciary duty to

24 Chase's depositors."  (Doc. 3 at 3).  However, these allegations do not support a finding that

25 Defendants are state or federal actors.

26        The Supreme Court has explained "[t]he mere fact that a business is subject to state regulation

27 does not by itself convert its action into that of the State." *Jackson v. Metropolitan Edison Co.*, 419

28 U.S. 345, 350 (1974).  Therefore, it follows that the employees of a business are not state actors

1    simply by virtue of their employer being subject to state regulation.   Moreover, Plaintiff does not

2    allege the individual Defendants are entwined with state polices in some manner.   Consequently,

3    Plaintiff fails to allege facts demonstrating there is a significantly close nexus between Defendants and

4    a state government to satisfy this test.

5                  2.      Plaintiff has not demonstrated a deprivation of a constitutional right.

6           According to Plaintiff, Defendants violated his rights to due process and equal protection under

7    the Fourteenth Amendment.   Significantly, even if Plaintiff demonstrated Defendants were state or

8    federal actors, he has failed to allege facts to state cognizable claims for these violations.

9                            a.      Due Process

10          The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive

11   any person of life, liberty, or property, without due process of law."   *U.S. Constitution, amend. XIV §1.*

12   This clause guarantees both procedural and substantive due process, protecting individuals against the

13   deprivation of liberty or property interest by the government.   "A substantive due process inquiry

14   focuses on 'what' the government has done," while a procedural due process analysis focuses upon

15   "'how and when' the government did it."   *Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir. 1990).   "A §

16   1983 claim based upon procedural due process has three elements: (1) a liberty or property interest

17   protected by the Constitution; (2) a deprivation of the interest by the government, and (3) lack of

18   process.   *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).   On the other hand,

19   "[i]n order to establish a constitutional violation based on substantive due process, a plaintiff must

20   show both a deprivation of liberty and conscience-shocking behavior by the government."   *Brittain v.*

21   *Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).

22          To the extent that Plaintiff alleges a violation of procedural due process, he has not identified a

23   protected property or liberty interest.   Consequently, Plaintiff's claim for a violation of procedural due

24   process fails.   Likewise, Plaintiff has not demonstrated a deprivation of liberty or conscious-shocking

25   behavior that may be attributed to the government.   Therefore, Plaintiff fails to state a cognizable

26   claim for due process violation.

27   ///

28   ///

9

b.      *Equal Protection*

The Equal Protection Clause states that "no state shall… deny to any person within its jurisdiction the equal protection of the laws." *U.S. Constitution, amend. XIV §1*.  In essence, this commands that all persons who are similarly situated be treated alike.  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  A plaintiff can establish an equal protection claim in two ways.  First, a plaintiff may allege "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999).  Second, where the acts in question do not involve a protected class, a plaintiff can establish a "class of one" claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Even when viewed liberally, Plaintiff's amended complaint fails to state an equal protection violation.  Plaintiff alleges he is a member of protected classes because he is an African-American senior citizen.  (Doc. 3 at 10).  Plaintiff summarily contends Defendants discriminated against him on these bases.  *Id.* However, this conclusion is not sufficient to state a claim, because there are no facts to support this assertion.  *See Iqbal*, 129 S. Ct. at 1949; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (the court is "not bound to accept as true a legal conclusion couched as a factual allegation").  Although the Court identified this deficiency in his original complaint (Doc. 2 at 9), Plaintiff does not allege facts supporting a contention that Defendants discriminated against him in violation of his equal protection rights or that he was treated differently from other similarly situated individuals.  Therefore, Plaintiff has failed to state cognizable claim for an equal protection violation.

**D.      Conspiracy under 42 U.S.C. §S 1985, 1986**

Although Plaintiff does not specifically identify conspiracy as a cause of action, he asserts the Court has jurisdiction over the matter in part due to 42 U.S.C. § 1985 (Doc. 3 at 3) which governs claims of conspiracy to interfere with civil rights.  A claim of conspiracy requires a plaintiff to "demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999) (citations omitted).  In addition, a plaintiff must show an "actual deprivation of constitutional rights." *Hart v. Parks*, 450

1  F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th

2  Cir. 1989)).  "To be liable, each participant in the conspiracy need not know the exact details of the

3  plan, but each participant must at least share the common objective of the conspiracy."  *United Steel*

4  *Workers of Am. v. Phelps Dodge Corp.*, 865 F.3d 1539, 1540-42 (9th Cir. 1989).  A conspiracy may be

5  properly alleged when a plaintiff states "which defendants conspired, how they conspired and how the

6  conspiracy led to a deprivation of his constitutional rights."  *Harris v. Roderick*, 126 F.3d 1189, 1196

7  (9th Cir. 1997).

8         Notably, Plaintiff did not make any factual allegations regarding a conspiracy.  As Plaintiff

9  was informed previously, the Court will not speculate as to which defendants Plaintiff believes

10  conspired to violate his rights or the manner in which they did so.  *See Bell Atlantic Corporation. v.*

11  *Twombly*, 127 S. Ct. 1955, 1965 (a plaintiff must set forth more than labels and conclusions, and

12  include the "grounds of his entitlement to relief") (citation omitted).  Therefore, Plaintiff has not stated

13  a cognizable claim for a conspiracy.  Likewise, Plaintiff has not stated a claim for a failure to prevent a

14  conspiracy under Section 1986, because he has not shown such conspiracy existed.  *See Trerice v.*

15  *Pedersen,* 769 F.2d 1398, 1403 (9th Cir. 1985) ("a cause of action is not provided under 42 U.S.C. §

16  1986 absent a valid claim for relief under section 1985").

17  **IV.     Findings and Recommendations**

18         Plaintiff is unable to proceed on a claim for the crime of embezzlement, because a private right

19  of action is not provided in the federal criminal statutes.  In addition, Plaintiff has not alleged facts to

20  support a claim for fraud.  Finally, Plaintiff has not alleged facts that demonstrate Defendants are state

21  or federal actors, or that Defendants committed violations of his constitutional rights.  Accordingly,

22  Plaintiff amended complaint fails to state a cognizable claim and it does not appear the Court has

23  subject matter jurisdiction over this action.

24         Previously, the Court granted Plaintiff the opportunity to amend his complaint.  (Doc. 2 at 11-

25  12).  However, in spite of the guidance offered by the Court regarding the elements necessary to state

26  his claim for violations of the Fourteenth Amendment, Plaintiff failed to state a cognizable claim that

27  links the defendants to a violation of his rights.  In addition, Plaintiff failed to identify any new facts or

28  add support to his claims.  Based upon the record and the facts set forth in Plaintiff's Complaint and

the First Amended Complaint, it does not appear the deficiencies of his complaint can be cured by amendment, and granting Plaintiff further leave to amend would be futile.  *See Lopez*, 203 F.3d 1122 at 1130 (requiring leave to be granted to the extent deficiencies can be cured by amendment).

Accordingly, **IT IS HEREBY RECOMMENDED**:

1.       Plaintiff's complaint be **DISMISSED WITHOUT LEAVE TO AMEND**;

2.       The Clerk of Court be directed to close the action, because this order terminates the action in its entirety.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these findings and recommendations, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   __**May 15, 2012**__                      ____**/s/ Jennifer L. Thurston**__
                                                                  UNITED STATES MAGISTRATE JUDGE

12